Gregory A. COLE, Plaintiff,

v.

**GENERAL MOTORS CORPORATION, a foreign corporation, Oldsmobile Division of General Motors Corporation, and AC Spark Plug Division of General Motors Corporation, Defendants.**

No. G83–408 CA.

United States District Court,
W.D. Michigan, S.D.

Oct. 22, 1984.

and its Oldsmobile ("Olds") and AC Spark Plug ("AC") Divisions, all named defendants. Suit was initially filed in the Ingham County Circuit Court charging that defendants' conduct violated the Michigan Handicappers Civil Rights Act ("MHCRA"), M.C. L.A. § 37.1101, *et seq.;* M.S.A. § 3.550(101), *et seq.*, and later amended to additionally claim breach of employment contract by Olds. Defendants removed the case to this court under 28 U.S.C. § 1441(b), on grounds that plaintiff's claims arose under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, since the suit, in effect, alleged violations of a contract collectively bargained between an employer and a union representing employees in an industry affecting commerce, as defined in section 301. The case is now before the court on defendants' motion for summary judgment.

### I.

Plaintiff began an apprenticeship program with defendant AC on April 10, 1978. On September 24, 1978, plaintiff was injured in an automobile accident. On his return to work on December 5, 1978, AC terminated him from the apprenticeship program, at least in part for failing to fulfill the program's education requirements. Plaintiff then began a janitorial position with GMC's Flint plant on December 18, 1978. On May 14, 1979, plaintiff began another apprenticeship with defendant Olds in Lansing and filled out an employment application, including a medical questionnaire, before he began. On March 19, 1980, defendant GMC suspended plaintiff from that program, and on April 8, 1980, it terminated him from the program, both actions based in part on alleged falsification of medical information on the medical questionnaire.

Plaintiff contends that he suffers from a personality disorder resulting from head injuries he sustained in the September 24, 1978, automobile accident. He contends the condition neither affected his qualifications for nor his ability to perform either of the apprenticeships, and says that he an-

Bart T. Stupak by Bart T. Stupak, Menominee, Mich., for plaintiff.

Foster, Swift, Collins & Coey by John L. Collins, William R. Schulz, Lansing, Mich., for defendants.

### OPINION RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

HILLMAN, Chief Judge.

This dispute arises from plaintiff Gregory Cole's suspension and eventual termination from two apprenticeship programs with General Motors Corporation ("GMC"),

swered the medical questionnaire in what he believed to be a truthful manner. He maintains that defendants' suspension and terminations based, in part, on plaintiff's alleged falsification of the medical questionnaire regarding this condition, violated the MHCRA. Defendants contend that both the suspension and the two terminations were "for cause"; that plaintiff's condition was and is related to both his qualifications and his ability to perform the apprenticeships; and that his condition was one but not the sole reason for the suspension and terminations.

On April 7, 1983, plaintiff amended his complaint to claim breach of employment contract by defendant Olds. At all times in question, plaintiff was a member of the United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW"), and agreements collectively bargained between the UAW and GMC were in effect. The collective bargaining agreements ("CBAs") provided a four-step grievance procedure, the final step involving issuance of a final and binding decision by an impartial umpire. Plaintiff's amended complaint makes no mention of the CBA's, simply alleging that as to the second apprenticeship, defendant Olds entered into an employment contract with him with full knowledge as to plaintiff's medical and physical condition and breached that contract by terminating him on the basis of alleged falsification of the medical questionnaire as it pertained to his physical/mental condition.

Following removal of the case under section 301 of the Labor Management Relations Act, *supra,* defendants moved for summary judgment under Fed.R.Civ.P. 56. Defendants' primary claim is that federal law preempts plaintiff's state law claims because (1) GMC as an employer in an industry affecting interstate commerce is required by section 301 to collectively bargain with its employees' chosen representative, the UAW; (2) section 301(a) provides for a federal district court suit as the remedy for breach of any collectively bargained agreement; (3) the substantive law to be applied to section 301(a) suits is federal law; and (4) state law may be consulted if compatible with the purpose of section 301, but the MHCRA is incompatible with the purpose and hence is preempted. Defendants then argue that applying federal law, plaintiff's claims are barred in their entirety either because plaintiff has failed to pursue the grievance remedies available under the CBA, a prerequisite to his right to sue under section 301(a), or, even if exhaustion is shown, plaintiff's claims are time barred because not filed within the applicable statute of limitations.

Plaintiff responds that state law is not preempted because the conduct sought to be regulated by the state is merely a peripheral concern of the Labor Management Relations Act or touches upon interests deeply rooted in local feeling and responsibility. Even if state law is preempted, plaintiff contends he has exhausted available remedies under the CBA by having his committeeman file a written grievance after his suspension in March, 1980, but that under the CBA the union had sole power to appeal to higher steps of the grievance procedure and wrongfully refused to do so, thereby preventing plaintiff from fully exhausting his contractual remedies. Finally, plaintiff contends that his complaint was filed within the six-year statute of limitations for breach of contract in Michigan, and the three-year statute of limitations for actions under the MHCRA, and hence the filing was timely. Defendants contend that the applicable statute of limitations in a section 301(a) case is the six-month limitation period provided in section 10(b) of the National Labor Relations Act, thereby making plaintiff's filing more than two and one-half years after his April, 1980, termination untimely.

## II.

On a motion for summary judgment, the movant bears the burden of showing conclusively that there is no genuine issue of material fact, and that the movant is entitled to summary judgment as a matter of law. *Smith v. Hudson,* 600 F.2d 60 (6th

Cir.1979); *Tee-Pak, Inc. v. St. Regis Paper Co.*, 491 F.2d 1193 (6th Cir.1974); Fed.R. Civ.P. 56(a). In determining whether there are issues of fact requiring a trial, "the inferences to be drawn from the underlying facts contained in [the affidavits, attached exhibits and depositions] must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). A court may not resolve disputed questions of fact in a summary judgment decision, and if a disputed question of fact remains, the district court should deny the motion and proceed to trial. *United States v. Articles of Device*, 527 F.2d 1008, 1011 (6th Cir.1976).

### III.

■ Section 301 gives the federal district courts jurisdiction over suits alleging violations of collectively bargained contracts in industries affecting commerce, and the substantive law to be applied in such suits is federal law, "which the courts must fashion from the policy of our national labor laws." *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 456, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957), where the Supreme Court further stated:

"Federal interpretation of the federal law will govern, not state law. *Cf. Jerome v. United States*, 318 U.S. 101, 104 [, 63 S.Ct. 483, 485, 87 L.Ed. 640.] But state law, if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy. *See Board of Commissioners v. United States, supra*, [308 U.S.] [343] at 351–352 [, 60 S.Ct. 285, 288–289, 84 L.Ed. 313.] Any state law applied, however, will be absorbed as federal law and will not be an independent source of private rights."

*Id.* at 457, 77 S.Ct. at 918.

■ As a preliminary matter, I agree with defendants that both counts of plaintiff's amended complaint assert claims which are inextricably related to the CBAs in effect between GMC and the UAW, and hence they "arise under" and invoke section 301(a) and related rules of law. According to the affidavit of Dennis Richmond, filed in support of defendants' motion, paragraph 8 of the CBA exclusively reserved to GMC the right to hire, promote, discharge or discipline for cause. Paragraph 77 of the CBA governed complaints regarding unjust or discriminatory layoffs or discharges and their handling according to the grievance procedures set forth in paragraphs 28 through 55. Notwithstanding plaintiff's characterization of his claims as MHCRA violations, both counts of his complaint seek a remedy for defendants' suspension and discharge of plaintiff, conduct governed by the CBA.

■ The next inquiry is whether the MHCRA, the state law basis for plaintiff's claims, is compatible with the purposes of section 301. The philosophy of section 301 is to give statutory recognition to the collective bargaining agreement as a valid, binding and enforceable contract, and hence to promote a higher degree of responsibility on the parties to the agreement. *Lincoln Mills*, 353 U.S. at 454, 77 S.Ct. at 916. "[Section 301] expresses a federal policy that federal courts should enforce those agreements on behalf of or against labor organizations and that industrial peace can be best obtained only in this way." *Id.* at 455, 77 S.Ct. at 917, where the Supreme Court concluded that the purpose of section 301 was to provide the legal remedies necessary to effect that goal.

■ Section 202(1)(a) through (e) of the MHCRA, M.C.L.A. § 37.1202, M.S.A. § 3.550(2), directs that an employer shall not:

"(a) Fail or refuse to hire, recruit or promote an individual because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position.

(b) Discharge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a handicap that is unrelated to the individ-

ual's ability to perform the duties of a particular job or position.

(c) Limit, segregate, or classify an employee or applicant for employment in a way which deprives or tends to deprive an individual of employment opportunities or otherwise adversely affects the status of an employee because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position.

(d) Fail or refuse to hire, recruit, or promote an individual on the basis of physical or mental examinations that are not directly related to the requirements of the specific job.

(e) Discharge or take other discriminatory action against an individual on the basis of physical or mental examinations that are not directly related to the requirements of the specific job."

Section 606 of the MHCRA, M.C.L.A. § 37.1606, M.S.A. § 3.550(606), then provides that a person alleging a violation of the act may bring a civil action for appropriate injunctive relief or damages, or both, in the state circuit courts. Plaintiff here seeks damages and also injunctive relief, asking the court to order defendants to (a) expunge certain portions of plaintiff's personnel files, (b) revise their employment applications and questionnaires in terms of the information they seek to elicit, and (3) cease and desist certain employment practices which plaintiff deems discriminatory. Because such applications of the MHCRA could potentially alter or abrogate rights and duties which GMC and the UAW have collectively bargained for, I hold that the MHCRA is incompatible with section 301's purpose. Rather than working to uphold collectively bargained agreements, the MHCRA could potentially negate them. Accordingly, the MHCRA is preempted and federal law will govern this action.

■ *Republic Steel v. Maddox*, 379 U.S. 650, 652–653, 85 S.Ct. 614, 616–17, 13 L.Ed.2d 580 (1965), states the applicable federal law on the exhaustion doctrine:

"As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by the employer and union as the mode of redress. If the union refuses to press or only perfunctorily presses the individual's claim, differences may arise as to the forms of redress then available. But unless the contract provides otherwise, there can be no doubt that the employee must afford the union the opportunity to act on his behalf. Congress has expressly approved contract grievance procedures as a preferred method for settling disputes and stabilizing the 'common law' of the plant.... And it cannot be said, in the normal situation, that contract grievance procedures are inadequate to protect the interests of an aggrieved employee until the employee has attempted to implement the procedures and found them so."

(Citations omitted.) According to the affidavits of John Lewis and Dennis Richmond filed in support of defendants' motion, GMC's labor relations file reflects that neither plaintiff nor any UAW official on his behalf, nor anyone else, ever initiated or pursued any grievance to or through the four-step grievance procedure provided in the CBAs, either as to the 1980 suspension and termination or the earlier December, 1978, termination. Plaintiff, however, in his June 20, 1983, deposition, testified that following his 1980 suspension, a committeeman at defendant Olds filed a written grievance on his behalf which plaintiff had signed. Plaintiff testified that he doesn't have a copy of the grievance form, doesn't recall any of the union personnel he dealt with regarding the grievance, and never received written notification of the results of the grievance. Under *Maddox, supra*, some *attempt* to pursue CBA grievance procedures is a prerequisite to filing suit. Because the record developed to date consists of conflicting testimony on that issue, at least as to the 1980 suspension and termination, judgment would be inappropriate at this time. Accordingly, as to the 1980 suspension and termination claims, I withhold judgment on whether or not plain-

tiff exhausted or attempted to exhaust the contractual grievance procedures available to him and will provide the parties further opportunity to develop the record on that point.

 With respect to the 1978 termination, however, defendants' affidavits contain testimony that no grievance proceedings were ever attempted by or on behalf of plaintiff, according to the defendants' labor relations file. Plaintiff's deposition testimony is silent on the question of grievance pursuit following the 1978 termination. The inferences to be drawn from the affidavits and that deposition testimony, viewed in the light most favorable to plaintiff, as the party opposing the motion, are that no attempt was made to grieve the 1978 termination. Accordingly, I hold that defendants' motion for summary judgment is granted insofar as it applies to the 1978 termination claim, for the reason that plaintiff's failure to attempt to use the contractual grievance procedure means that he has failed to state a claim under section 301 upon which relief can be granted.

Defendants' motion also alleges that plaintiff's claims are time-barred because plaintiff failed to file suit within six months after the alleged violations of the CBA by defendants. Defendants cite *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), as authority for the proposition that the Supreme Court has rejected the customary analysis used to determine the applicable limitations period when the federal law at issue expresses none. The customary analysis is summarized as follows:

"As is often the case in federal civil law, there is no statute of limitations expressly applicable to this suit. In such situations we do not ordinarily assume that Congress intended that there be no time limit on actions at all; rather, our task is to 'borrow' the most suitable statute or other rule of timeliness from some other source. We have generally concluded that Congress intended that the courts apply the most closely analogous statute of limitations under state law." *Id.* 103 S.Ct. at 2287. The *DelCostello* Court states that state statutes of limitations may sometimes be unsatisfactory vehicles for enforcing federal law and, in those instances, the Court has instead used timeliness rules drawn from federal law—either express limitations periods from related federal statutes, or such alternatives as laches. *Id.*, at 2289. In *DelCostello*, because the plaintiff employee was suing both the employer and the union, alleging breach of the CBA by the employer and breach of its duty of fair representation by the union through mishandling of a grievance, the Court recognized that the suit was not "a straightforward breach of contract suit under § 301 ... but a hybrid § 301/fair representation claim ... [with] no close analogy in ordinary state law." *Id.*, at 2291. The Court therefore refused to borrow from state law, instead turning to the six-month period which section 10(b) of the National Labor Relations Act sets as the limitation for making unfair labor practice claims to the National Labor Relations Board. The Court concluded this period was particularly suitable for borrowing because labor law has established that "all breaches of a union's duty of fair representation are in fact unfair labor practices." *Id.*, at 2293.

Although defendants cite *DelCostello* as authority for the proposition that the customary "most closely analogous statute of limitations under state law" borrowing analysis has now been rejected, the Court was careful to expressly state the opposite:

"We stress that our holding today should not be taken as a departure from prior practice in borrowing limitations periods for federal causes of action, in labor law or elsewhere. We do not mean to suggest that federal courts should eschew use of state limitations periods anytime state law fails to provide a perfect analogy. On the contrary, as the courts have often discovered, there is not always an obvious state-law choice for application to a given federal cause of action; yet *resort to state law remains*

*the norm for borrowing of limitations periods."*

[Citations omitted; emphasis added.) *Id.*, at 2294.

■ Plaintiff in the case at bar has not sued the UAW; he has sued his employer alone and the suit is essentially an action for damages caused by an alleged breach of the employer's contractual obligation under paragraph 8 of the CBA to discharge or discipline for cause. Such an action closely resembles an action for breach of contract at common law. Because the Michigan statute of limitations for breach of contract is six years, M.C.L.A. § 600.5807, M.S.A. § 27A.5807, and because plaintiff's suit was filed on December 20, 1982, only two and one-half years after the purported violations in March and April, 1980, I rule that the 1980 violation claim is not time-barred and defendants' motion for summary judgment is denied to the extent it is based upon such an assertion.

## CONCLUSION

Defendants' motion for summary judgment is granted as to all of plaintiffs' claims regarding the 1978 termination, but it is denied as to plaintiffs' claims regarding the 1980 suspension and termination.