Lorenzo WALLACE, Kip Anway, Gerald J. Belanger, Michael J. Booth, Leonard E. Boulanger, Milton Burke, Ignacio D. Carannza, Dennis J. Fell, Don E. Finnigan, Arlene E. Guy, Gary Handley, Harold B. Laesser, Richard LeBlanc, Robert E. Parsons, Gerald M. Paschke, Joanne M. Pinsky, Patrick J. Rank, Michael J. Rykwalder, Carl J. Turla, and Shirley J. Vella, for themselves and all other persons similarly situated, Plaintiffs,

v.

DETROIT COKE CORPORATION, a Michigan corporation, Toledo Coke Corporation, a foreign corporation, Erie Coke Corporation, a foreign corporation, Tonawanda Coke Corporation, a foreign corporation, James Donald Crane, a/k/a J.D. Crane, Jointly and Severally, Defendants.

UNITED STEELWORKERS OF AMERICA, AFL–CIO–CLC, John Patrick Chirillo, Edward J. DeBoe, Henry Flores, Dorian Grays, Ronald H. Hein, Robert L. Hooton, Christopher Jenkins, Robert Johnson, John Paul Kaminski, Camilo Munoz Lopez, Luis V. Luna, Hartley J. McCraig, Ronnie Morris, Robert Newkirk, Freddie B. Nichols, William M. Norris, Melvin P. Pocus, Eugene Robinson, Steven Romack, Donnie K. Saylor, Clifford Leroy Shores, Jere Sieloff, Ma-

jor Smith, Daryl E. Snyder, Isiah Spraggins, Jr., Gregory J. Theodoran, Willie Joe Tucker, Rozana Williams, John Wilson, and Wayne Allen Wise, for themselves and all other persons similarly situated, Plaintiffs,

v.

DETROIT COKE CORPORATION, a Michigan corporation; Toledo Coke Corporation, a foreign corporation; Erie Coke Corporation, a foreign corporation; Tonawanda Coke Corporation, a foreign corporation, and James Donald Crane, a/k/a J.D. Crane, Jointly and Severally, Defendants.

Nos. 92–CV–72890–DT, 92–CV–72891–DT.

United States District Court,
E.D. Michigan, S.D.

April 7, 1993.

Kim Arthur Siegfried, United Steelworkers of America, AFL–CIO–CLC, Allen Park, MI, Miller, Cohen, Martens, Ice & Geary, P.C., Michael J. Bommarito, Southfield, MI, NLG/Sugar Law Center for Economic and Social Justice, Julie H. Hurwitz, Executive Director, Detroit, MI, Pitt, Dowty & McGehee, P.C., Michael L. Pitt, Cooperating Atty., NLG/Sugar Law Center for Economic and Social Justice, Royal Oak, MI, for plaintiffs.

Pepper, Hamilton & Scheetz by Richard A. Rossmann, Wallace R. Haley, Detroit, MI, Lewis, Rice & Fingersh by John J. Gazzoli, Jr., Gary M. Smith, St. Louis, MO, for defendant Detroit Coke Corp.

Honigman Miller Schwartz and Cohn by A. David Mikesell, William D. Sargent, Frank T. Mamat, Claudia D. Orr, Detroit, MI, for defendants Toledo Coke Corp., Erie Coke Corp., Tonawanda Coke Corp. and James Donald Crane.

## OPINION

GILMORE, District Judge.

In these two cases, Plaintiffs claim that Defendants violated the Worker Adjustment and Retraining Notification Act (hereinafter "WARN Act"), 29 U.S.C. § 2101 *et seq.*, which requires that all employees of a company with at least 100 employees be provided 60 days or more written notice in the event of a plant closing or mass layoff. Plaintiffs, comprising both union and non-union workers, allege that Defendant Detroit Coke Corporation closed its coke production facility on September 12, 1991, giving them notice only two hours or less before closing. Plaintiffs filed their Complaints on April 30, 1992, and Defendants removed them to this Court on May 24, 1992.

Before the Court are Defendant Crane's Motion to Dismiss, Defendants' Motions for Dismissal and Summary Judgment, and Plaintiffs' Motion for Consolidation for Trial. For the reasons set forth below, the Court grants Defendant Crane's Motion to Dismiss and Plaintiffs' Motion for Consolidation, and denies Defendants' Motions for Dismissal and Summary Judgment.

### I. Defendant Crane's Motion to Dismiss

The first question is whether the Court should dismiss Defendant Crane, who owns and operates the defendant corporations, from the suit because he is not an "employer" under the WARN Act. Based on the Act's language and legislative history and on case precedent, the Court concludes that Defendant Crane is not an employer under the Act.

The WARN Act expressly defines "employer" as:

any business enterprise that employs—

(A) 100 or more employees, excluding part-time employees; or

(B) 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of hours of overtime)
. . .

29 U.S.C. § 2101(a)(1). The legislative history provides that:

"Employer." The conference agreement retains the Senate Amendment language that the term 'employer' means a *business enterprise.* The conferees intend that a 'business enterprise' be deemed synonymous with the terms company, firm or business....

5 U.S.Code Cong. & Admin.News 2078, 2079 (1988) (emphasis added). In addition, other courts have held that an individual may not be held liable under the Act. *Cruz v. Robert Abbey, Inc.,* 778 F.Supp. 605, 609 (E.D.N.Y. 1991) (dismissing Vice–President and owner of defendant company); *Carpenters Dist. Council v. Dillard Dept. Stores,* 778 F.Supp. 297, 315–16 (E.D.La.1991) (dismissing directors and officers).

In response, Plaintiffs argue that Defendant Crane is a proper party based on piercing the corporate veil. The Sixth Circuit states that the factors to consider in deciding whether to pierce the corporate veil include:

> undercapitalization of the corporation, the maintenance of separate books, the separation of corporate and individual finances, the use of the corporation to support fraud or illegality, the honoring of corporate formalities, and whether the corporation is merely a sham.

*Laborers' Pension Trust Fund v. Weinberger Homes,* 872 F.2d 702, 706 (6th Cir.1988). The Court finds that Plaintiffs make no showing that any of these factors are present and, therefore, the Court cannot pierce the corporate veil. As a result, the Court grants Defendant Crane's Motion to Dismiss.

## II. Defendants' Motion to Dismiss

■ Defendants assert that the cases are time-barred by the statute of limitations. They contend that a six month statute of limitations, borrowed from the National Labor Relations Act § 10(b)'s six month limitation, should apply and that all labor related cases, like those under the WARN Act, require this same statute of limitations. For the reasons set forth below, the Court finds that the cases are not time-barred.

The WARN Act has no statute of limitations. Defendants heavily rely on *DelCostello v. Int'l Brotherhood of Teamsters, et al.,* 462 U.S. 151, 172, 103 S.Ct. 2281, 2294, 76 L.Ed.2d 476 (1983), which held that NRLA § 10(b)'s six month period was applicable to a hybrid suit by an employee against an employer for breach of a collective bargaining agreement and against a union for breach of the duty of fair representation. The Court applied this short period because the breach of the duty of fair representation was governed by the six month limitation period for unfair labor practices under the NRLA.

■ The Court, however, finds Defendants' reliance misplaced. It is significant that the *DelCostello* Court ruled:

> We stress that our holding today should not be taken as a departure from prior practice in borrowing limitations periods for federal causes of action, in labor law or elsewhere. We do not mean to suggest that federal courts should eschew use of state limitations periods any time state law fails to provide a perfect analogy. On the contrary, as courts have often discovered, there is not always an obvious state law choice for application to a given federal cause of action; *yet resort to state law remains the norm for the borrowing of limitations periods.*

*Id.,* 462 U.S. at 171, 103 S.Ct. at 2294 (emphasis added; cite omitted). Therefore, when a federal statute is silent as to the applicable statute of limitations, the general rule dictates that a federal court is to borrow the state statute of limitations governing the analogous cause of action. *Board of Regents v. Tomanio,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980). *Accord Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Yet, when federal interests favor a uniform statute of limitations, a court must then determine whether the period should be derived from a state or federal source. If the court chooses a federal source, then it must determine that the analogous federal source truly affords a "closer fit" with the cause of action at issue than does any available state-law source. *Lampf v. Gilbertson,* 501 U.S. ——, ——, 111 S.Ct. 2773, 2779, 115 L.Ed.2d 321, 332 (1991). *See also DelCostello, supra.*

Cases subsequent to *DelCostello* illustrate the uniqueness of its holding. The Supreme

Court clarified its position in *Reed v. United Transportation Union,* 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989), where it reversed the Fourth Circuit's application of *DelCostello* because a case for free speech rights guaranteed under the Labor–Management Reporting and Disclosure Act of 1959 was not directly related in any way to collective bargaining or dispute settlement under a collective bargaining agreement (as was the case in *DelCostello* ). Likewise, the Sixth Circuit has applied *DelCostello* narrowly. For example, in a suit under the NLRA's § 303 by a subcontractor alleging that a union engaged in strikes against general contractors to discourage them from dealing with plaintiff, the court held that, "Attention to the reasoning of *DelCostello* and its own express limitations indicate that *DelCostello* is not a 'green light' to apply [§ 10(b)'s limitations period] to all actions in which federal labor law is implicated." *Carruthers Ready–Mix, Inc. v. Cement Masons Local Union,* 779 F.2d 320, 327 (6th Cir.1985).[1]

Before applying the general rule of a state statute of limitations, the Court rejects Defendants' notion that a federal statute of limitations should apply for the sake of uniformity. Defendants are incorrect in claiming that a WARN Act case is similar in purpose and practice to a hybrid NLRA action. The WARN Act diverges from the traditional labor law area governing unions and collective bargaining and where the shorter six-month limitations period may prevail. Instead, the Act provides covered employees with a 60 day notice of plant closing or mass layoff, and this includes notice to non-union employees. Even the legislative history dictates that WARN rights and remedies are "separate" from other employee rights found in other statutes, such as the NLRA, LMRA, ERISA, and state plant closing laws. Senate Comm. Report on 5.538, June 2, 1987, Calender No. 129, Report 100–

62, p. 25, Leg. Hist. of S.2527 (WARN), at 843. Furthermore, WARN sponsor, Senator Metzenbaum, said during final debate: "This bill is absolutely neutral with respect to labor law." Cong.Rec., at S8611–12 (June 27, 1988). Since WARN rights have no direct relationship to collective bargaining procedures and because many WARN Act plaintiffs are not represented by unions, *DelCostello* 's § 10(b) limitations period is inapplicable and thus there is no need to borrow any alleged statute of limitations governing federal labor related suits. *Contra Newspaper and Mail Deliverers' Union of N.Y. v. United Magazine Co.,* 809 F.Supp. 185 (E.D.N.Y. 1992).

Since § 10(b)'s six month statute of limitation does not apply, the Court looks to a comparable state statute of limitations. Defendants assert that the six month limitations period under the Bulk Sales Act of the Uniform Commercial Code applies but fail to illustrate how the WARN Act is analogous to circumstances addressed with bulk sales. Rather, the Court concludes that Michigan's six year statute of limitation for breach of contract applies. M.C.L.A. § 600.5807(8).

In Michigan, the focal point in determining the applicable statute of limitations is the type of interest allegedly harmed. *Barnard v. Dilley,* 134 Mich.App. 375, 378, 350 N.W.2d 887 (1984). The type of interest harmed in the instant suits is contractual. When an employer unilaterally and radically changes an employee's terms of employment without notice and the employee is suddenly discharged from employment, he essentially is breaching that worker's employment contract. Furthermore, the damages under the Act are the pay and benefits for each day of violation up to a maximum of 60 days. 29 U.S.C. § 2104(a). Obviously, such damages will be calculated by looking to the collective bargaining agreements for union workers

---

1. The Sixth Circuit has also construed the *DelCostello* holding narrowly in other cases. *See, e.g., Laczay v. Ross Adhesives, A Div. of Conros Corp.,* 855 F.2d 351, 355 (6th Cir.1988), *cert. denied,* 489 U.S. 1014, 109 S.Ct. 1125, 103 L.Ed.2d 188 (1989) (holding *Hoosier Cardinal* required applying the most analogous state statute of limitations to § 301 actions); *Laborers' Pension & Trust Fund, supra,* 872 F.2d at 706 (6th Cir.1988) (applying Michigan six-year statute of limitations to ERISA collection action on employee benefit packages), and *Central States S.E. & S.W. Areas Pension Fund v. Kraftco, Inc.,* 799 F.2d 1098, 1106–07 (6th Cir.1986) (applying Tenn. six-year limitations statute to ERISA case because it was "not a duty of fair representation case").

and to the explicit and implied employment contracts for non-union employees.

■ A six year statute of limitations applies for breach of collective bargaining agreements and for implied employment agreements in Michigan. *See Richmond v. Wyeth Lab. Div. of Amer. Home Products,* 641 F.Supp. 483 (W.D.Mich.1986) (six years for breach of implied employment contract); *Cole v. General Motors, Corp.,* 641 F.Supp. 28 (W.D.Mich.1984) (six years for breach of a collective bargaining agreement); *accord UAW v. Hoosier Cardinal,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966) (LRMA's § 301 subject to Indiana's six-year limitations period for breach of contract). Since it is unnecessary to arrive at the most "perfect analogy" in finding a statute of limitations, *DelCostello,* 462 U.S. at 171, 103 S.Ct. at 2294, the Court finds that Michigan's statute of limitations for breach of contract is the most appropriate in these cases and thus denies Defendants' Motion to Dismiss.

### III. *Defendants' Motions for Summary Judgment*

■ Defendants admit failing to give the required 60 days notice. There are genuine issues of material fact regarding the "faltering company" and the "unforeseeable business circumstances" exceptions. The Court finds that because this case is full of factual issues, Defendants' Motions for Summary Judgment are denied.

First, the "faltering company" exception takes into account whether the defendant corporation closing the plant should be viewed in its company-wide context. 20 C.F.R. § 639.9(a)(4); 54 Fed.Reg. 16061–62; Cong.Rec. S8693 (June 28, 1988); *Carpenters Dist. Council,* 778 F.Supp. at 303–04. Therefore, whether Defendant Detroit Coke is to be considered a single entity, or whether all the remaining defendants are interrelated and should be treated as a "single employer," is a question of fact remaining.

Specifically, Defendants clearly believe that only Defendant Detroit Coke's actions are at issue. However, Plaintiffs place into contention whether the four corporate coke plants operated as a "single employer."

Plaintiffs present affidavits showing there is evidence of commingling of assets between these entities, such as routine exchanges of inventory, coke production products, equipment, parts, and even cash. *See* Affidavits of Fell, Laesser, and Guy. They also show that there was centralized control over the plants' labor and shared employees between the plants. *See* Affidavits of LeBlanc, Fell, Wallace and Laesser. Moreover, the extensive audit of the discovery materials by Kohn, Plaintiffs' financial expert, is replete with examples of how the companies functioned as a single entity with substantial financial arrangements between them.

In addition, there are questions of fact surrounding whether Defendants meet the "faltering company" exception itself. This defense provides that:

> An employer may order the shutdown of a single site of employment before the conclusion of the 60–day period if as of the time that notice would have been required the employer was actively seeking capital or business which, if obtained, would have enabled the employer to avoid or postpone the shutdown and the employer reasonably and in good faith believed that giving the notice required would have precluded the employer from obtaining the needed capital or business.

29 U.S.C. § 2102(b)(1). An employer relying on this exception "shall give as much notice as practicable and at that time shall give a brief statement of the basis for reducing the notification period." 29 U.S.C. § 2102(b)(3).

Defendants contend that this exception is applicable because Crane was seeking additional capital and business from Chemical Bank, NKK Chemical USA, and Allied Signal without which Detroit Coke would not have been able to stay in business. *See* Affidavit of Crane. However, the circumstances presented by Defendants do not appear to be the type contemplated by the "faltering business" exception. Defendants must show that the capital that was sought would have enabled the employer to avoid the plant closing or postpone it. *Carpenters Dist. Council,* 778 F.Supp. at 305. Here, rather than keeping the plant afloat, Crane tried selling it—an option not covered under the exception.

*Local 397 v. Midwest Fasteners, Inc.*, 763 F.Supp. 78, 82–83 (D.N.J.1990). Even more striking are the results of Kohn's audit, where he concludes that Crane, or anyone else for acting for Defendants, was not actively seeking capital in a commercially reasonable manner at the time which notice would have been required.[2] As a result, the Court finds that Defendants fail to carry their burden of showing undisputed facts that the defendant companies are not to be viewed in a company-wide context, and that their efforts meet the "faltering company" exception by seeking "reasonable opportunities" to avoid shutdown.

■ Secondly, there are genuine issues of material fact as to the "unforeseeable business circumstances" exception. This exception applies to "plant closings and mass lay-offs caused by business circumstances that were not reasonably foreseeable at the time that 60–day notice would have been required," 20 C.F.R. § 639.9(b), such as "some sudden, dramatic, and unexpected action or condition outside of the employer's control. . . ." 20 C.F.R. § 639.9(b)(1). *See also* 20 C.F.R. § 639.9(b)(2). Defendants must therefore show two elements to meet this exception: 1) whether the unforeseeable business circumstance they claim caused the plant closure, and 2) whether it should have been reasonably foreseeable. *Jones v. Kayser–Roth Hosiery, Inc.*, 748 F.Supp. 1276, 1285–87 (E.D.Tenn.1990). Defendants' assertion of this exception fails on the first prong.

Defendants contend that the refusal of NKK Chemical USA's $459,000 payment caused the plant to shut down. However, this contention is entirely inconsistent with Crane's earlier dealings that unless Detroit Coke obtained $15 million for their oven and environmental repairs, the plant would close. *See* Affidavit of Crane, paras. 8–9. Thus, it did not matter whether NKK Chemical paid or not, because Crane knew as early as sixty days before the closing (July 15, 1991) that $15 million, and not $459,000, would be needed to keep the plant open. Also, Detroit Coke already planned for the closing prior to the cancellation of any payment, according to letters from Detroit Coke to NKK Chemical. *See* Affidavit of Kohn. As a result, there remains an issue of fact as whether NKK Chemical's nonpayment was an unforeseeable business circumstance, as Defendants claim, thereby causing the plant to close.

The Court denies summary judgment for Defendants based on either the faltering company or unforeseen circumstance exception.

## IV. *Plaintiffs' Motion to Consolidate for Trial*

The Court believes that the cases can be consolidated for trial. Both the *Wallace* and *USWA* cases involve claims under the WARN Act for the same plant closing at the Detroit Coke facility on September 12, 1991. Both sets of plaintiffs claimed that they were deprived lawful notice of the closing and both seek the same remedies under the Act. No parties have shown that trying the cases of the union and non-union workers together would be drastically affected or unwieldy. Because they involve common questions of law and fact, the Court thus consolidates them for trial. Federal Rule of Civil Procedure 42(a).

IT IS SO ORDERED.

---

2. In brief, Kohn shows that 1) Allied was the only source of funds approached between July 12, 1991 and September 6, 1991 to raise capital; 2) the finance team of Defendants and the Coyne Group realized that commercial banks and other financial institutions would not lend money to D–Detroit Coke, given the state of its financial statements; 3) in an effort to obtain funds, Defendant Detroit Coke did not offer any additional sources of collateral or guarantees as security; and 4) the finance team determined that Defendant Detroit Coke's financing needs were $15,000,000 in the early summer of 1991 and, yet, a July 12, 1991 letter to Allied requested only $5,000,000. *See* Affidavit of Kohn.