984 F.2d 732
 142 L.R.R.M. (BNA) 2329, 124 Lab.Cas. P 10,561
 James W. HOLMES; John Johnson; Ervin Bradley, Plaintiffs-Appellants,
Charles Todd, et al., Plaintiffs,
v.
Ray DONOVAN, Secretary, United States Department of Labor;
William Anderson; Robert Holmes; Local 149 of
the Bakery, Confectionery and Tobacco
Workers Union, Defendants-Appellees.
 No. 91-6467.
 United States Court of Appeals,
Sixth Circuit.
 Argued Sept. 25, 1992.
Decided Jan. 25, 1993.
 
 Elizabeth L. Gilchrist (argued and briefed), Jackson, MS, for plaintiffs-appellants.
 James W. Holmes, pro se.
 John Johnson, pro se.
 Ervin Bradley, pro se.
 Mark Allen (argued and briefed), Lynn Agee, Agee, Allen, Godwin, Morris & Laurenzi, Memphis, TN, for defendants-appellees.
 Before: BOGGS and SUHRHEINRICH, Circuit Judges; and WELLFORD, Senior Circuit Judge.
 SUHRHEINRICH, Circuit Judge.
 
 
 1
 This appeal consists of two consolidated actions brought in the Western District of Tennessee involving labor claims against the same union, as well as two of its officers and the Department of Labor.[1] Plaintiffs James Holmes and Ervin Bradley appeal the dismissals of their actions as time-barred. Plaintiff John Johnson appeals the district court's ruling finding that he had failed to exhaust his internal union remedies and failed to allege facts to support his emotional distress claim. For the following reasons, we REVERSE the district court's application of statute of limitations of the National Labor Relations Act (NLRA), § 10(b), 29 U.S.C. § 160(b) to Bradley's Labor-Management Reporting and Disclosure Act (LMRDA), § 101(a)(5), 29 U.S.C. § 411(a)(5) claim and REMAND for application of Tenn.Code Ann. § 28-3-104(a)(1). In all other regards, we AFFIRM.
 
 I. FACTS
 A. James Holmes
 
 2
 On January 15, 1985, Holmes brought suit against Local 149 of the Bakery, Confectionery and Tobacco Workers Union (Local 149), Business Agent William Anderson, and the Department of Labor. Holmes alleges that, during a celebrity roast in September 1983, Local 149 and William Anderson accepted a "thing of value" from an employer in violation of the Labor-Management Relations Act (LMRA), § 302, 29 U.S.C. § 186.[2] Defendants challenged the action as time-barred. Noting that § 302 does not have a correlating statute of limitations, the court borrowed the six-month statute of limitations contained in National Labor Relations Act (NLRA), § 10(b), 29 U.S.C. § 160(b), which expressly governs claims of unfair labor practices under NLRA, § 8, 29 U.S.C. § 158.[3] The court dismissed Holmes's action on March 4, 1988.
 
 B. Ervin Bradley
 
 3
 On March, 21, 1986, Bradley filed suit against Local 149, Anderson, and Union President Robert Holmes, alleging that he was expelled from the union without notice or a hearing as required by the Labor-Management Reporting and Disclosure Act (LMRDA), § 101(a)(5), 29 U.S.C. § 411(a)(5).[4] Defendants also challenged this action as time-barred. Because LMRDA § 101 is also without a corresponding statute of limitations, the district court again applied the six-month statute of limitations contained in § 10(b) of the NLRA and dismissed Bradley's claim.
 
 C. John Johnson
 
 4
 On March 21, 1986, Johnson filed suit against Local 149, Anderson, and Holmes, alleging that the union violated LMRDA § 101 by not allowing him to present certain motions at a meeting of the union's executive board. Johnson also seeks damages for emotional distress. Upon conclusion of a bench trial, the district court ruled that Johnson's claim was barred because he had failed to exhaust internal union procedures before filing suit. The court also held that he had failed to show any physical manifestation of emotional distress upon which to award damages.D. Issues on Appeal
 
 
 5
 Collectively, plaintiffs raise the following four issues:
 
 
 6
 (1) whether the district court erred by applying the six-month statute of limitations to Holmes's LMRA § 302 claim rather than applying a state statute of limitations;
 
 
 7
 (2) whether the district court erred by applying the six-month statute of limitations to Bradley's LMRDA § 101(a)(5) claim rather than Tennessee's statute of limitations for personal injury actions;
 
 
 8
 (3) whether the district court erred in holding that Johnson's claim was barred because he had failed to exhaust internal union procedures; and
 
 
 9
 (4) whether the district court erred in holding that Johnson was not entitled to damages for emotional distress.
 
 II. STANDARDS OF REVIEW
 
 10
 Selection of an appropriate statute of limitations is a conclusion of law which we review de novo. Farber v. Massillon Bd. of Educ., 917 F.2d 1391, 1399-1400 (6th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 2851, 115 L.Ed.2d 1019 (1991). See Taylor and Gaskin, Inc. v. Chris-Craft Indus., 732 F.2d 1273, 1277 (6th Cir.1984) (conclusions of law reviewed de novo).
 
 
 11
 As to Johnson's bench trial judgment, we review findings of fact under the clearly erroneous standard; conclusions of law are reviewed de novo. Fed.R.Civ.P. 52(a); Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); In re Edward M. Johnson & Assocs., Inc., 845 F.2d 1395, 1398 (6th Cir.1988); Dayton Power & Light Co. v. FERC, 843 F.2d 947, 954 (6th Cir.1988); Lancaster Glass Corp. v. Phillips ECG, Inc., 835 F.2d 652, 658 (6th Cir.1987).
 
 III. ANALYSIS
 
 12
 A. The Statute of Limitations for Section 302
 
 
 13
 Our first task on review is to examine the district court's decision to borrow the statute of limitations contained in NLRA § 10(b) to govern Holmes's claim under LMRA § 302, rather than the Tennessee statute of limitations for either breaches of corporate fiduciary duties, misdemeanors, state racketeering violations, or the state's residual statute of limitations.[5] In general, when Congress does not specify a statute of limitations to govern a federal action, the standard practice is to borrow an analogous statute from state law. DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 158-59, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983); Reed v. United Transport. Union, 488 U.S. 319, 323-24, 109 S.Ct. 621, 625, 102 L.Ed.2d 665 (1989). This practice "rests on the assumption that, absent some sound reason to do otherwise, Congress would likely intend that the courts follow their previous practice of borrowing state provisions." DelCostello, 462 U.S. at 158 n. 12, 103 S.Ct. at 2287 n. 12. Nevertheless, state law should not be borrowed "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking...." Id. at 172, 103 S.Ct. at 2294.
 
 
 14
 The district court relied on DelCostello, which involved two consolidated actions brought by employees against their employers under LMRA, § 301, 29 U.S.C. § 185,[6] for breach of the collective bargaining agreement, and claims against their unions under the implied duty of fair representation. The Supreme Court reversed the lower courts' decision to apply state statutes of limitations. Id. at 154-55, 103 S.Ct. at 2285.
 
 
 15
 The Court explained that, although simple LMRA § 301 claims are analogous to state breach of contract claims, the analogy did not neatly apply to "hybrid" suits brought under both LMRA § 301 and the implied duty of fair representation. While a LMRA § 301 action involves only the breach of a collective bargaining agreement by an employer, a hybrid suit also involves the "discriminatory, dishonest, arbitrary, or perfunctory" action of the union which represents the employee. Id. at 164, 103 S.Ct. at 2290. The employee "must not only show that [the employer's action] was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union." Id. at 165, 103 S.Ct. at 2291 (quoting United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 67, 101 S.Ct. 1559, 1566, 67 L.Ed.2d 732 (1981) (Stewart, J., concurring) (quoting Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 570-71, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976))). Thus, a hybrid suit could not be treated as a "straightforward breach-of-contract suit" for purposes of choosing an appropriate statute of limitations. DelCostello, 462 U.S. at 165, 103 S.Ct. at 2291.
 
 
 16
 The Court decided that hybrid suits should be governed by the six-month statute of limitations ... of NLRA § 10(b), rather than state statutes of limitations for arbitration or legal malpractice, finding that "the family resemblance [between charges of unfair labor practices, which are expressly governed by NLRA § 10(b), and breaches of the duty of fair representation] is undeniable." Id. at 170, 103 S.Ct. at 2293.[7] Both duty of fair representation claims and charges of unfair labor practices by unions are based on allegations of "unfair, arbitrary, or discriminatory treatment of workers by unions." Id. Moreover, NLRA § 10(b) addresses the same concerns appropriate for a statute of limitations which governs hybrid suits, namely the balance "between the national interests in stable bargaining relationships and finality of private settlements, and an employee's interest in setting aside what he views as an unjust settlement under the collective-bargaining system." Id. at 171, 103 S.Ct. at 2294 (quoting United Parcel Service, 451 U.S. at 70, 101 S.Ct. at 1568 (Stewart, J., concurring)). Based on all of these considerations, the Court applied NLRA § 10(b) to the hybrid suits.
 
 
 17
 Like the hybrid suits in DelCostello, claims under LMRA § 302 bear a marked similarity to certain claims of unfair labor practices. Section 302(a) prevents unions from accepting a "thing of value" from an employer. Similarly, NLRA § 8(b)(6) provides:
 
 
 18
 (b) It shall be an unfair labor practice for a labor organization or its agents--
 
 
 19
 (6) to cause or attempt to cause an employer to pay or deliver or agree to pay or deliver any money or other thing of value, in the nature of an exaction, for services which are not performed or not to be performed....
 
 
 20
 NLRA, § 8(b)(6), 29 U.S.C. § 158(b)(6). Both NLRA § 8 and LMRA § 302(a) prevent the improper exchange of funds or any other "thing of value" between employers and unions. Both are designed to ensure that collective bargaining agreements are formed and enforced fairly. As the Supreme Court has stated:
 
 
 21
 [Section 302] was enacted as part of a comprehensive revision of federal labor policy ... and was aimed at practices which Congress considered inimical to the integrity of the collective bargaining process.
 
 
 22
 ....
 
 
 23
 Those members of Congress who supported the amendment were concerned with corruption of collective bargaining....
 
 
 24
 Arroyo v. United States, 359 U.S. 419, 425, 79 S.Ct. 864, 868, 3 L.Ed.2d 915 (1959) (emphasis added). See also Reinforcing Iron Workers, Local Union 426 v. Bechtel Power Corp., 634 F.2d 258 (6th Cir.1982). Like the hybrid suits of DelCostello, LMRA § 302 actions are designed to encourage and protect collective bargaining. Based upon this similarity of purpose, we hold that NLRA § 10(b) governs actions brought under LMRA § 302.
 
 
 25
 B. The Statute of Limitations for a Section 101 Claim
 
 
 26
 The district court, again relying on DelCostello, applied the six-month statute of limitations contained in NLRA § 10(b) to Bradley's claim under LMRDA § 101(a)(5) and dismissed it as untimely. Bradley contends that the district court should have applied the one-year statute of limitations for personal injury actions contained in Tenn.Code Ann. § 28-3-104.[8]
 
 
 27
 Although the Supreme Court has not decided the precise question presented, the Reed decision provides substantial guidance. In that case, the plaintiff sued his union and several of its officers, alleging violations of LMRDA, § 101(a)(2), 29 U.S.C. § 411(a)(2), which guarantees the freedom of speech and assembly to union members. Reed, 488 U.S. at 321-22, 109 S.Ct. at 624. The lower court, relying on DelCostello, had borrowed § 10(b) of the NLRA as the appropriate statute of limitations. Id. at 323, 109 S.Ct. at 624. In reversing, the Supreme Court held that LMRDA § 101(a)(2) actions are analogous to actions brought under 42 U.S.C. § 1983 for the purpose of deciding which statute of limitations is most appropriate to govern actions under LMRDA § 101(a)(2).[9] Id. at 326, 109 S.Ct. at 626. Like § 1983, LMRDA § 101(a)(2) protects individual rights.[10] Its main goal is "ensuring that unions [are] democratically governed and responsive to the will of their memberships." Id. at 325, 109 S.Ct. at 626 (quoting Finnegan v. Leu, 456 U.S. 431, 436, 102 S.Ct. 1867, 1870, 72 L.Ed.2d 239 (1982)). See Allgood v. Elyria United Methodist Home, 904 F.2d 373, 377-78 (6th Cir.) (discussing principal goals of LMRDA § 101), reh'g granted, in part, appeal dismissed, in part, 913 F.2d 1159 (6th Cir.1990). Thus, both § 1983 and LMRDA § 101(a)(2) are designed to deter or redress denials of individual rights: LMRDA § 101(a)(2) concerns denial of individual rights by unions while § 1983 concerns denial of individual rights by government officials acting under color of state law.
 
 
 28
 Previously, in Owens v. Okure, 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989), and Wilson v. Garcia, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the Court had decided that § 1983 actions are governed by state general or residual statutes of limitations for personal injury actions. See Reed, 488 U.S. at 326, 109 S.Ct. at 626. Because LMRDA § 101(a)(2) also protects individual rights, the analogy of § 1983 actions to personal injury actions applied equally well to LMRDA § 101(a)(2). Therefore, LMRDA actions are governed by state general or residual statutes of limitations. Id. at 327, 109 S.Ct. at 627.
 
 
 29
 Although the present action is based on LMRDA § 101(a)(5), not LMRDA § 101(a)(2), we nevertheless find that the analogy to personal injury actions is also appropriate here because LMRDA § 101(a)(5) shares LMRDA § 101(a)(2)'s similarity with § 1983. As we have stated: "Section 101(a)(5) of the Act ... prohibits the disciplining of any member by a union unless he has been 'afforded a full and fair hearing.' We construe this to mean that traditional concepts of due process should apply." Kuebler v. Cleveland Lithographers and Photoengravers Union Local 24-P, 473 F.2d 359, 363-64 (6th Cir.1973). Thus, LMRDA § 101(a)(5) addresses issues similar to the fundamental notions of due process. It protects individual rights; therefore, like § 1983, it should be governed by state general or residual statutes for personal injury actions.
 
 
 30
 This result comports with our decision in Allgood, in which we applied state residual personal injury statutes of limitations to actions brought under LMRDA § 101(a)(1) & (2). Allgood, 904 F.2d at 378. We noted in Allgood that all LMRDA § 101 claims "serve the core function of enhancing union democracy through enforcement of rights of union members, not of protecting the integrity of collective bargaining...." Id. at 377 (quoting Reed, 488 U.S. at 331 n. 6, 109 S.Ct. at 629 n. 6 (emphasis original)). Therefore, they are more analogous to § 1983 actions governed by personal injury statutes of limitations than charges of unfair labor practices which are governed by NLRA § 10(b). Id. at 378.
 
 
 31
 We hold that the district court should have applied the one-year statute of limitations for personal injury actions contained in Tenn.Code Ann. § 28-3-104(a)(1) to Bradley's LMRDA § 101(a)(5) claim.[11]
 
 C. Exhaustion of Internal Union Procedures
 
 32
 Johnson argues that the district court improperly held that he had failed to exhaust his internal union procedures before bringing suit because exhaustion would have been futile. At Local 149's executive board meeting in February 1985, Johnson attempted to introduce thirteen motions during the new business portion of the meeting. President Robert Holmes ruled the motions out of order. President Holmes did not allow Johnson to present the motions at the next meeting because they related to other charges then pending before the board. Although Johnson had the right to appeal the decision to the board as a whole, he did not do so. Johnson did file charges with the board against President Holmes, alleging Holmes had not fulfilled his duties as president. In September 1985, the board dismissed the charges. Johnson also sent a copy of the charges to the International Union, but received no response.
 
 
 33
 Generally, a union member must exhaust internal procedures before turning to federal court. This policy is based on "deferring judicial consideration" of "disputes arising over internal union matters such as those involving the interpretation and application of a union constitution." Clayton v. International Union, UAW, 451 U.S. 679, 688, 101 S.Ct. 2088, 2095, 68 L.Ed.2d 538 (1981) (emphasis original). Requiring exhaustion is especially appropriate where the claims concern only internal union affairs. See Geddes v. Chrysler Corp., 608 F.2d 261, 264 (6th Cir.1979). However, we held that exhaustion would not be required when pursuing internal remedies would be futile. Terwilliger v. Greyhound Lines, Inc., 882 F.2d 1033, 1039 (6th Cir.1989), cert. denied, 495 U.S. 946, 110 S.Ct. 2204, 109 L.Ed.2d 531 (1990); Geddes, 608 F.2d at 264-65. In Geddes, we held that exhaustion would not be required if "the internal remedies are clearly biased against plaintiffs" or if "resort to internal union remedies might be futile ... because ... the position of the union has hardened against that of the plaintiffs." Id.
 
 
 34
 Johnson argues that the evidence showed that the executive board's position had "hardened" against Johnson. Johnson testified to factions on the board and that his appeal would have been directed to an opposing faction. Another witness testified that only board members who voted against President Holmes had difficulties in presenting new business. Johnson also argues that the 16-3 vote of the executive board dismissing Johnson's charges against him indicates the bias against Johnson.
 
 
 35
 However, Bill Anderson testified that no faction voted consistently in Holmes's favor. Additionally, no specific evidence was adduced that the appeal of Holmes's ruling to the board would have been biased. There are thirty to forty members on the board and no evidence was shown that all members, or even a majority of them, voted consistently in Holmes's favor. Further, the vote on his charges brought against Holmes does not necessarily indicate how the board would have ruled on a narrow appeal from Holmes's ruling against the motion. There is a vast difference between appealing a single parliamentary ruling and bringing charges against a union president for not carrying out his duties. We do not find that the district court's conclusion was clearly erroneous; therefore, we hold that Johnson should have pursued his internal union remedies before filing this action.
 
 D. Damages for Emotional Distress
 
 36
 In light of our conclusion that Johnson's claims are barred, we need not consider whether the district court erred in holding that he had failed to prove damages for emotional distress because he had shown no physical manifestation of that distress. However, even if no physical manifestation is required, it is clear that evidence of emotional distress must be more substantial than that adduced by Johnson to support such a claim.
 
 
 37
 Johnson based his claim of emotional distress on the following statement which he made at trial:
 
 
 38
 This is concerning damages involving the lawsuit, and we feel at this time that damages are appropriate. And the decision not to hear the [motions] really brought about [a] character conflict with myself, indicating that going back to the plant and talking to those individuals, those members, those other board members at that time made things very difficult to face the peers. And no one really thinks about that, but it is a fact of life that one thinks about what the peers think of them. And I try to be an upstanding person and try to follow procedures....
 
 
 39
 Jt.App. 241-42 (Transcript of John Johnson's Testimony 106-07). This is simply not enough to award emotional distress damages. Damages for emotional distress may be awarded upon a showing of intimidation, marital problems, weight loss, loss of sleep, shock, or humiliation. See Lilley v. BTM Corp., 958 F.2d 746, 754 (6th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 376, 121 L.Ed.2d 287 (1992); Moody v. Pepsi-Cola Metro. Bottling Co., 915 F.2d 201, 210 (6th Cir.1990); Murphy v. International Union of Operating Engineers, Local 18, 774 F.2d 114, 125-26 (6th Cir.1985), cert. denied, 475 U.S. 1017, 106 S.Ct. 1201, 89 L.Ed.2d 315 (1986). We do not think that the "character conflict" described by Johnson is comparable to these emotional distress claims; therefore, his claim could not succeed.
 
 
 40
 We REVERSE the application of NLRA § 10(b) to Bradley's LMRDA § 101(a)(5) claim and REMAND for application of Tenn.Code Ann. § 28-3-104(a)(1). In all other regards, we AFFIRM.
 
 
 
 [1]
 Plaintiffs Bradley and Johnson filed their action together. The trial court consolidated their action with that of plaintiff Holmes
 
 
 [2]
 The LMRA is designed to protect the rights of employees and employers and prevent labor practices which are harmful to the free flow of commerce. LMRA, § 1, 29 U.S.C. § 141. Section 302(a) specifically prohibits an employer from transferring any "thing of value" to employees, unions, or their representatives. LMRA, § 302(a), 29 U.S.C. § 186(a)
 
 
 [3]
 The NLRA encourages collective bargaining between employers and employees in order to avoid "strikes and other forms of industrial strife or unrest." NLRA, § 1, 29 U.S.C. § 151. Section 8 defines the actions which constitute unfair labor practices inimical to the collective bargaining process. These practices include, for example, coercing employees to either join or not join unions, refusing to bargain collectively, or discharging an employee for testifying against an employer in a labor action. See NLRA, § 8, 29 U.S.C. § 158
 
 
 [4]
 The LMRDA was enacted to stop practices of unions and employers adverse to the goals of the LMRA. LMRDA § 2, 29 U.S.C. § 401. To monitor these practices, the LMRDA requires unions and employers to file reports of their activities with the Secretary of Labor. See LMRDA, §§ 201-03, 29 U.S.C. §§ 431-33. Additionally, LMRDA § 101 guarantees various individual rights to union members upon which a union may not infringe. Section 101(a)(5) specifically provides that "[n]o member of any labor organization may be fined, suspended, expelled, or otherwise disciplined ... by such labor organization ... unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing." LMRDA, § 101(a)(5), 29 U.S.C. § 411(a)(5)
 
 
 [5]
 See Tenn.Code.Ann. §§ 28-3-110 (residual statute), 39-12-206 (racketeering), 40-2-102 (misdemeanors), 48-18-601 (fiduciary duties), 48-58-601 (fiduciary duties)
 
 
 [6]
 Section 301 allows "[s]uits for violation of contracts between an employer and a labor organization representing employees...." LMRA, § 301(a), 29 U.S.C. § 185(a)
 
 
 [7]
 Later, in Reed, the Court emphasized that "[t]he specific focus of our comparison between unfair labor practice charges governed by § 10(b) and hybrid § 301/fair representation claims was their effects upon the formation and operation of the collective-bargaining agreement ... and upon the private settlement of disputes under that agreement...." Reed, 488 U.S. at 329, 109 S.Ct. at 628
 
 
 [8]
 Section 28-3-104 provides, in pertinent part, that actions "for injuries to the person" shall be brought within one year after the cause of action accrues. Tenn.Code Ann. § 28-3-104(a)(1)
 
 
 [9]
 Section 1983 provides:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....
 Like § 101, § 1983 does not have its own statute of limitations. See Reed, 488 U.S. at 239, 109 S.Ct. at 575.
 
 
 [10]
 In addition to the freedoms of speech and assembly, § 101 guarantees equal rights, limits the increase of union dues and fees, protects the right of members to sue the union or its members, and guarantees notice and a hearing before any disciplinary action is levied by the union. LMRDA, § 101, 29 U.S.C. § 411
 
 
 [11]
 We have held that § 28-3-104(a) governs § 1983 suits brought in Tennessee. Berndt v. Tennessee, 796 F.2d 879, 883 (6th Cir.1986); Sevier v. Turner, 742 F.2d 262, 272 (6th Cir.1984). Therefore, it is also appropriate for LMRDA § 101(a)(5)