996 F.2d 1214
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Patrice DICKINSON, Plaintiff-Appellant,
v.
OHIO BELL COMMUNICATIONS, INC. and Ameritech, Inc.
Defendants-Appellees.
 No. 92-3348.
 United States Court of Appeals, Sixth Circuit.
 July 7, 1993.
 
 Before KEITH and JONES, Circuit Judges, and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 In this Title VII case, the plaintiff, Patrice Dickinson ("Dickinson"), appeals the judgment of the district court, contending that the district court erred in concluding that she failed to establish a prima facie case of discrimination and to carry her ultimate burden of proof that the defendant, Ohio Bell Communications, Inc. violated Title VII when it removed her from her position as an Account Executive. She also argues that the district court erred in refusing to give her a jury trial on her Title VII claims. For the reasons stated below, we AFFIRM the judgment of the district court.
 
 
 2
 * Dickinson, a black woman, took a job with Ohio Bell Telephone Company in Cleveland, Ohio in 1979 as a Marketing Administrator ("MA"). MA's, later renamed Systems Design Consultants ("SDC"), assisted Account Executives ("AE"), the persons responsible for selling large telecommunications systems, with designing phone systems for potential clients and in implementing the phone systems once they are sold. She was a successful SDC, and Ohio Bell promoted her several times to give her responsibility with larger and more complex phone systems. In 1984, after divestiture, Ohio Bell spun off the defendant, Ohio Bell Communications, Inc. ("OBCOM"), as a separate concern to market Ohio Bell's telecommunications products, such as phone systems. Dickinson moved to OBCOM in 1984, and continued to work as an SDC. Her performance at OBCOM was always rated above average, and she received several performance-related, year-end bonuses.
 
 
 3
 In late 1984, Dickinson was promoted to a full-time AE by Gary Miller, a black man who was a Cleveland-based sales manager. In early June 1985, Miller left OBCOM for another position, and a man named Ken Krstolic became her sales manager. Krstolic met with Dickinson shortly after he became sales manager to review her current sales and sales forecasts. She presented an optimistic sales forecast at that meeting. He met with her again in July and August of 1985 and she again presented optimistic forecasts; however, her sales had not been good and she had not closed any of the sales that she had projected.
 
 
 4
 At the August meeting, Krstolic told Dickinson that she would have to attain $200,000 in sales by the end of 1985. Krstolic also informed Dickinson that he would review her performance on a quarterly basis in 1986, and that if a change became necessary, she could resume her old job as an SDC. In 1985, her total sales were $183,345, consisting mostly of item sales, and she closed none of the accounts that she had listed in her sales forecasts.
 
 
 5
 On December 19, 1985, Dickinson presented Krstolic with her 1986 sales forecast, projecting sales of approximately $1,000,000. Krstolic permitted Dickinson to continue as an AE into 1986, but told her that she must come reasonably close to $200,000 in sales for the first quarter of 1986, that is, one fourth of the total 1986 objective of $800,000 for Cleveland-based AE's, otherwise she would be removed from her AE position, but would be permitted to continue with OBCOM as an SDC.
 
 
 6
 When Dickinson's sales for the first quarter of 1986 amounted to only $53,153, Krstolic informed her that he would have to make a change. On March 27, 1986, Krstolic informed her that she would be removed from the AE position, but that she could return to her former position as an SDC. She refused to accept the SDC position, so Krstolic fired her.
 
 
 7
 On March 30, 1988, after going through the appropriate EEOC procedure, Dickinson filed the instant action. On March 19, 1991, she filed an Amended Complaint, the one on which trial was had, containing claims under Title VII, 42 U.S.C. § 1981, and the Equal Pay Act. The complaint also contained a claim for negligent infliction of extreme emotional distress and a demand for trial by jury. On February 14, 1992, the trial court granted summary judgment for OBCOM on the common law tort claim and the § 1981 claim. The court proceeded to trial on the Equal Pay Act and Title VII claims.
 
 
 8
 On the morning that trial was to begin, the district court denied Dickinson's jury trial demand on the Title VII claim, but offered to permit her to bifurcate the trial to try the Equal Pay Act claims to a jury. She refused the offer and the case proceeded to a bench trial on both claims. At the close of her proof, the district court dismissed the Equal Pay Act claims and, after trial, found for OBCOM on the Title VII claim, ruling that Dickinson had not established a prima facie case of discrimination and that, in any event, she did not carry her ultimate burden of proof. Dickinson then perfected a timely appeal to this court.
 
 II
 
 9
 This court reviews a district court's findings of fact under the clearly erroneous standard, Fed.Rule Civ.P. 52(a); and its conclusions of law de novo. Holmes v. Donovan, 984 F.2d 732, 735 (6th Cir.1993).
 
 III
 
 10
 Dickinson first contends that the district court's findings that she did not establish a prima facie case of discrimination or carry her ultimate burden of proof were clearly erroneous. In a disparate treatment case, the plaintiff carries the ultimate burden of proving that he or she "has been the victim of intentional discrimination." Shah v. General Electric Co., 816 F.2d 264, 267 (6th Cir.1987). Where, as in the instant case, a plaintiff does not present direct evidence of discrimination, a court must follow the three-step analysis established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). There, the Court held, the plaintiff must first make out a prima facie case of discrimination. Id. at 802. Next, the burden shifts to the employer who must "articulate some legitimate, nondiscriminatory reason" for its actions. Id. The burden then shifts back to the plaintiff to show that the proffered reason is just a pretext to conceal a discriminatory act.
 
 
 11
 Our review of the record convinces us that the district court's findings that Dickinson did not establish a prima facie case of discrimination and, in any event, carry her ultimate burden of proof are not clearly erroneous. During 1985 Dickinson sold only $183,345 worth of telecommunications equipment. This is over $400,000 less than the $600,000 sales goal set for all AE's for 1985. Further, of the ten AE's based in Cleveland, only two produced less revenue than Dickinson during the first quarter of 1986, but both of them had prior sales histories and a number of deals in the pipeline and both ended up with sales in excess of $800,000 by the end of 1986. Further, Ernestine Williams, a black woman, was a successful AE with OBCOM before she moved to personnel, and a black woman named Theo Scott was also a successful AE in the Toledo, Ohio office at the time Dickinson was fired.
 
 
 12
 The district court's finding, based upon this record, that Dickinson did not establish a prima facie case of discrimination or carry her ultimate burden of proof is not clearly erroneous. Rather, the record shows that OBCOM had a legitimate business reason for firing Dickinson: namely, that she did not produce sufficient revenue. Accordingly, we conclude that the district court did not err in finding against Dickinson on the Title VII claim.
 
 IV
 
 13
 We turn now to Dickinson's contention that the district court erred when it refused to give her a jury trial on her Title VII claim. At the time that Dickinson filed her lawsuit, the prevailing view was that Title VII claims could not be tried to a jury because the only relief available under Title VII was equitable relief; e.g., an injunction or back pay.[1] 42 U.S.C. § 2000e-5(g) (1988); Great American Fed. Sav. & Loan Ass'n v. Novotny, 442 U.S. 366, 375 (1979); Patterson v. McLean Credit Union, 491 U.S. 164, 211 (1989) (Brennan, J., dissenting in part and concurring in part); EEOC v. Detroit Edison Co., 515 F.2d 301, 308-09 (6th Cir.1975).
 
 
 14
 In 1991, however, Congress passed the Civil Rights Act ("Act") of 1991, which amended Title VII to permit plaintiffs to recover compensatory and punitive damages under Title VII[2] and authorized a trial by jury for those claims.[3] 42 U.S.C. § 1981a(a)(1), (c)(1) (Supp. III 1991).[4] Congress did not, however, create a right to a jury trial for back pay and the other equitable relief permitted under § 2000e-5(g). Unfortunately, Congress did not specify whether the Act applies retroactively: section 402 of the Act merely provides that the Act takes effect upon enactment. Civil Rights Act of 1991, Pub.L. No. 102-166, § 401(a), 105 Stat. 1071, 1099 (1991).
 
 
 15
 This court, however, has held in a number of decisions, both published and unpublished, that the Act does not apply retroactively. See, e.g. Holt v. Michigan Dept. of Corrections, 974 F.2d 771 (6th Cir.1992); Vogel v. City of Cincinnati, 959 F.2d 594 (6th Cir.1992).[5] Thus, we conclude that the district court did not err in refusing Dickinson's demand for a jury trial on her Title VII claims.
 
 V
 
 16
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Dickinson filed an amended complaint in March, 1991, the Civil Rights Act of 1991 did not go into effect until November, 1991. Civil Rights Act of 1991, Pub.L. No. 102-166, § 401(a), 105 Stat. 1071, 1099 (1991)
 
 
 [2]
 Section 1981a(a)(1) provides:
 In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-5) against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) prohibited under section 703, 704, or 717 of the Act (42 U.S.C. 2000e-2 or 2000e-3), and provided that the complaining party cannot recover under section 1981 of this title, the complaining party may recover compensatory and punitive damages as allowed in subsection (b) of this section, in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964 [2000e-5(g) ], from the respondent.
 42 U.S.C. § 1981a(a)(1) (Supp. III 1991).
 
 
 [3]
 Section 1981a(c) provides: If a complaining party seeks compensatory or punitive damages under this section--
 (1) any party may demand a trial by jury.
 42 U.S.C. § 1981a(c) (Supp. III 1991) (emphasis added).
 
 
 [4]
 Compensatory, and in some situations punitive damages, were available under § 1981 before the Act went into effect. Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 460 (1975)
 
 
 [5]
 We are aware that the Supreme Court has taken certiorari of a decision of this court to decide whether the Act applies retroactively. Harvis v. Roadway Express Co., 973 F.2d 490 (6th Cir.1992), cert. granted sub nom. Rivers v. Roadway Express, 61 U.S.L.W. 3580 (February 22, 1993) (92-938). We will decide the case at bar, however, because Rivers will not be argued this term and the law in this court is clear that the Act does not apply retroactively