UNITED MINE WORKERS
OF AMERICA, AFL–CIO,
Plaintiff–Appellant,

v.

PEABODY COAL COMPANY,
Defendant–Appellee.

No. 93–6020.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 5, 1994.

Decided Oct. 31, 1994.

Rehearing and Suggestion for Rehearing
En Banc Denied Dec. 14, 1994.

Christy Hoffman (briefed), Robert H. Stropp, United Mine Workers of America, Washington, DC, George N. Davies (argued), Robert M. Weaver (briefed), Longshore, Nakamura & Quinn, Birmingham, AL, Jerry P. Rhoads (briefed), Rhoads & Rhoads, Madisonville, KY, for United Mine Workers of America AFL–CIO.

Winfrey P. Blackburn, Stites & Harbison, Frankfort, KY, James D. Moyer, Michael D. Risley (argued and briefed), Stites & Harbison, Louisville, KY, for Peabody Coal Co.

Julie H. Hurwitz, Kary L. Moss (briefed), the Sugar Law Center for Economic and Social Justice, Detroit, MI, for amicus curiae International Union, United Auto., Aerospace and Agricultural Implement Workers of America (UAW), Oil, Chemical and Atomic Workers Intern. Union (OCAWIU); Auto. Mechanics Local 701, Intern. Ass'n of Machinists, Guild/Sugar Law Center for Economic and Social Justice.

Mona C. Zeiberg (briefed), National Chamber Litigation Center, Washington, DC, for amicus curiae The Chamber of Commerce of the U.S.

Before KENNEDY, RYAN, and NORRIS, Circuit Judges.

RYAN, Circuit Judge.

The plaintiff, United Mine Workers of America, appeals the district court's order dismissing on summary judgment the plaintiff's complaint that the defendant, Peabody Coal Company, violated the Worker Adjustment and Retraining Notification Act (WARN), 29 U.S.C. §§ 2101 *et seq.*, by closing a mining facility without providing employees with the statutorily mandated 60 days notice. Applying the six-month statute of limitations applicable to unfair labor practice charges under section 10(b) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(b), the district court held that the plaintiff's claim was time-barred.

The sole question on appeal is whether the district court erred in borrowing the section 10(b) limitations period rather than the state statute of limitations identified by the plaintiff. We conclude that the district court did not err in borrowing the limitations period from section 10(b), and affirm the district court's order.

## I.

The defendant operated a coal mining facility, the River Queen Mine, near Greenville, Kentucky. On June 3, 1991, the Kentucky Department of Natural Resources ordered the defendant to stop all blasting at the mine. The defendant obeyed the DNR's order and, as a consequence, layoffs began June 5, 1991. By June 28, 1991, the defendant had laid off 82 mine employees.

Almost one year later, on May 15, 1992, the plaintiff filed suit in district court for the Western District of Kentucky, alleging that the defendant had violated WARN by failing to provide laid off employees with 60 days advance notice. The defendant filed a motion for summary judgment, claiming that the plaintiff's complaint was untimely under section 10(b) of the NLRA. In a summary order, the district court agreed that the claims were time-barred. This appeal followed.

## II.

We review a district court's award of summary judgment *de novo. Pinney Dock & Transp. Co. v. Penn Cent. Corp.,* 838 F.2d 1445, 1472 (6th Cir.), *cert. denied,* 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988). The Federal Rules of Civil Procedure require that summary judgment,

> be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c).

## III.

### A.

The plaintiff argues that the district court should have applied Kentucky's five-year limitations period for "[a]n action upon a liability created by statute," Ky.Rev.Stat. Ann. § 413.120, rather than section 10(b). According to the plaintiff, it is well settled that the court must borrow from state law when Congress, in creating a cause of action, has failed to identify a limitations period. Only when a federal limitations period both provides the closer analogy and directly implicates important federal policy are courts authorized to depart from the state-borrowing rule. WARN, the plaintiff argues, implicates neither of the federal policies—workforce stability and protection of the integrity of collective bargaining—that section 10(b) was designated to promote.

Nor, according to the plaintiff, is the NLRA a proper analogy to WARN. The plaintiff claims that section 10(b) contemplates an administrative process that requires minimal effort by an aggrieved employee, whereas an employee can pursue his rights under WARN only through the judicial process. Based on the need to retain counsel alone, the plaintiff maintains that the

court should reject the relatively short section 10(b) limitations period.

Several labor organizations and the NLG/Sugar Law Center for Economic and Social Justice, in *amicus curiae*,[1] offer the additional argument that a short limitations period is incompatible with class-action litigation, which WARN encourages.

In response, the defendant, and the United States Chamber of Commerce in *amicus curiae*, argue that section 10(b) both furnishes the most analogous limitations period and far better serves the federal policies implicated by WARN, than does reference to state law.

The defendant claims that federal law provides the better analogy because claims arising under WARN are inherently uniform and uniquely federal, warranting a uniform statute of limitations. According to the defendant, section 10(b) provides the obvious choice for this uniform standard because of similarities between the NLRA and WARN. In contrast, the defendant contends, Kentucky law contains no cause of action analogous to WARN, leaving a catchall limitations period as the only state law choice.

In arguing that section 10(b) far better effectuates the federal policies underlying WARN, the defendant contends that the policies implicated by both WARN and section 10(b) are the expeditious resolution of labor disputes and uniformity throughout federal labor legislation. According to the defendant, WARN's purpose, immediate retraining and adjustment, and the limited nature of the WARN remedy, 60 days pay, both demonstrate that Congress intended these claims to receive speedy handling. As to the need for uniformity, the defendant argues that, because a single decision by an employer often creates WARN liability in several states, a uniform limitations period is needed to prevent forum shopping.

**B.**

WARN requires large employers to provide 60–days advance notice of plant closings

or mass layoffs. 29 U.S.C. § 2102(a). Absent extenuating circumstances, notice must be given "to each representative of the affected employees . . . or, if there is no such representative at that time, to each affected employee," as well as to designated state and municipal representatives. *Id.* WARN further provides that an employer that violates these strictures will be liable to each affected employee for back pay and benefits for up to 60 days, the length of the required notice. 29 U.S.C. § 2104(a)(1). The employer may also be liable to the municipality in which the layoff occurred, at a maximum penalty of $500 per day. 29 U.S.C. § 2104(a)(3). Affected employees or their representative, or the impacted municipality, may enforce these penalties by bringing suit "in any district court of the United States for any district in which the violation is alleged to have occurred, or in which the employer transacts business." 29 U.S.C. § 2104(a)(5).

While neither WARN itself nor its limited legislative history articulate the purpose of the legislation, federal regulations define WARN's purpose as follows:

> (a) *Purpose of WARN.* The Worker Adjustment and Retraining Notification Act . . . provides protection to workers, their families and communities by requiring employers to provide notification 60 calendar days in advance of plant closings and mass layoffs. Advance notice provides workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market. WARN also provides for notice to State dislocated worker units so that dislocated worker assistance can be promptly provided.

20 C.F.R. § 639.1.

WARN cross-references the NLRA in several respects. For example, WARN incorporates the NLRA's definition of "exclusive representative." 29 U.S.C. § 2101(a)(4). In

---

1. Those labor organizations joining in *amicus curiae* were the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America; the Oil, Chemical and Atomic Workers International Union; the Automobile Mechanics Local 701; and the International Association of Machinists.

addition, WARN clarifies that its notice requirements do not apply when employees lose active employment status, in conformity with the NLRA, because of their participation in an economic strike. 29 U.S.C. § 2103(2). While not specifically referencing the NLRA, WARN accommodates collectively bargained contract provisions by specifying that the WARN notice period "shall run concurrently with any period of notification required by contract." 29 U.S.C. § 2105. WARN regulations provide further insight, observing that "[c]ollective bargaining agreements may be used to clarify or amplify the terms and conditions of WARN, but may not reduce WARN rights." 20 C.F.R. § 639.1(g). Finally, in order to avoid unfair labor practice allegations that an employer failed to bargain, WARN specifies that "[t]he giving of notice pursuant to this chapter, if done in good faith compliance with this chapter, shall not constitute a violation of the National Labor Relations Act or the Railway Labor Act." 29 U.S.C. § 2108. Given this interrelationship, it is not surprising that we previously have relied on NLRA case law in interpreting WARN. *See Damron v. Rob Fork Mining Corp.*, 945 F.2d 121, 124–25 (6th Cir.1991).

■ As the plaintiff points out, however, the courts have expressed a preference for state statutes of limitations when Congress, in creating a cause of action, has failed to designate a limitations period. As a general rule, the court's "task is to 'borrow' the most suitable statute or other rule of timeliness from some other source." *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 158, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983). Usually, the other source will be "the most closely analogous statute of limitations under state law." *Id.* This "fallback rule ... rests on the assumption that, absent some sound reason to do otherwise, Congress would likely intend that the courts follow their previous practice of borrowing state provisions." *Id.* at 158, n. 12., 103 S.Ct. at 2287, n. 12.

The *DelCostello* Court cautioned, however, that state borrowing is not always the proper course:

> In some circumstances, ... state statutes of limitations can be unsatisfactory vehicles for the enforcement of federal law. In those instances, it may be inappropriate to conclude that Congress would choose to adopt state rules at odds with the purpose or operation of federal substantive law.

*Id.* at 161, 103 S.Ct. at 2289. The requisite circumstances exist, the Court declared, "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and ... the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking." *Id.* at 172, 103 S.Ct. at 2294.

The *DelCostello* Court was faced with just such a situation in the case of an employee's hybrid claim that his employer violated section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, at the same time his union violated its duty of fair representation. According to the Court, the six-month limitations period of section 10(b), enacted to govern unfair labor practices under the NLRA, provided a closer analogy than the suggested state law statutes because fair representation claims bear at least a "family resemblance" to union-directed unfair labor practice claims. 462 U.S. at 170, 103 S.Ct. at 2293–94. In addition, section 10(b) significantly and directly advanced the dueling federal policies at issue:

> "In § 10(b) of the NLRA, Congress established a limitations period attuned to what it viewed as the proper balance between the national interests in stable bargaining relationships and finality of private settlements, and an employee's interest in setting aside what he views as an unjust settlement under the collective-bargaining system. That is precisely the balance at issue in this case."

*Id.* at 171, 103 S.Ct. at 2294 (quoting *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 70–71, 101 S.Ct. 1559, 1568, 67 L.Ed.2d 732 (1981)).

Following *DelCostello*, the Supreme Court provided insight into the procedure for determining the applicable limitations period, this time in the context of civil claims brought under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964:

[T]he initial inquiry is whether all claims arising out of the federal statute "should be characterized in the same way, or whether they should be evaluated differently depending upon the varying factual circumstances and legal theories presented in each individual case." Once this characterization is made, the next inquiry is whether a federal or state statute of limitations should be used.

*Agency Holding Corp. v. Malley–Duff & Assoc., Inc.*, 483 U.S. 143, 147, 107 S.Ct. 2759, 2762, 97 L.Ed.2d 121 (1987) (citation omitted). In response to the first inquiry, the Court concluded that "a uniform statute of limitations [was] required to avoid intolerable 'uncertainty and time-consuming litigation.'" *Id.* at 150, 107 S.Ct. at 2764 (citation omitted). This uncertainty arose, necessarily, because of the multitude of limitations periods that arguably could be applicable, given RICO's breadth. "RICO cases commonly involve interstate transactions, and conceivably the statute of limitations of several States could govern any given RICO claim." *Id.* at 153, 107 S.Ct. at 2766. As a result, "the use of state statutes would present the danger of forum shopping and, at the very least, would 'virtually guarante[e] ... complex and expensive litigation over what should be a straightforward matter.'" *Id.* at 154, 107 S.Ct. at 2766 (citation omitted). Moreover, because of uncertainty over which limitations period a court ultimately would adopt, "'[p]laintiffs may be denied their just remedy if they delay in filing their claims, having wrongly postulated that the courts would apply a longer statute.'" *Id.* at 150, 107 S.Ct. at 2764 (citation omitted).

Against this background, we recently expanded section 10(b) to cover claims that the union illegally accepted something of value from the employer, in violation of section 302 of the Labor Management Relations Act, 29 U.S.C. § 186. *Holmes v. Donovan*, 984 F.2d 732 (6th Cir.1993). As noted there, section 302(a) prohibits conduct that also is prohibited by the unfair labor practice provisions of the NLRA, specifically section 8(b)(6), 29 U.S.C. § 158(b)(6). Primarily because of "this similarity of purpose," we extended the section 10(b) limitations period to LMRA section 302. *Id.* at 736–37.

The plaintiff primarily relies on the Second Circuit's recent rejection of section 10(b) as "'a significantly more appropriate vehicle for interstitial lawmaking'" in WARN actions. *United Paperworkers Int'l Union v. Specialty Paperboard, Inc.*, 999 F.2d 51, 53 (2d Cir.1993) (citation omitted). The *Specialty Paperboard* decision turned largely on that court's assessment that there was no need for a uniform federal limitations period: "Although suits may be brought either where the [layoff or plant closing] site is located or where the employer does business, 29 U.S.C. § 2104(a)(5), the advantages of forum shopping are minimal." *Id.* at 56. The court further explained that choice of law rules probably would require "'borrowing the law of the site since that would be the place of the injury.'" *Id.* at n. 9 (citation omitted).

On this basis, the *Specialty Paperboard* court concluded that Vermont's limitations period governing contract actions "best approximate[d] the federal legislative intent" in enacting WARN. *Id.* at 57. Key to its conclusion was the state's application of this limitations period to suits for workers' compensation benefits. *Id.* The court expressly declined to characterize WARN actions themselves as contractual in nature. *Id.* Similarly, the Third Circuit, the only other appellate court to have addressed the issue, has rejected the section 10(b) limitations provision in favor of the "most analogous" state statute of limitations, without indicating which of several Pennsylvania limitations statutes would apply. *United Steelworkers of America, AFL–CIO–CLC v. Crown Cork & Seal Co., Inc.*, 32 F.3d 53 (1994).

Other courts to consider the question of which limitations period governs WARN actions have reached differing results. In *Wallace v. Detroit Coke Corp.*, 818 F.Supp. 192 (E.D.Mich.1993), the district court agreed that the state limitations provision applicable to contract actions provided the closest analogy, but used a rationale entirely different than that offered in *Specialty Paperboard:*

> The type of interest harmed in [WARN] suits is contractual. When an employer unilaterally and radically changes an employee's terms of employment without no-

tice and the employee is suddenly discharged from employment, he essentially is breaching that worker's employment contract.

*Id.* at 196.

Several district courts have agreed with the district court here that section 10(b) provides the superior analogy in WARN actions. Typical of these decisions is *Newspaper & Mail Deliverers' Union of New York v. United Magazine Co.,* 809 F.Supp. 185 (E.D.N.Y. 1992). There, the court found that the limited remedy available under WARN evinced a policy that was better served by section 10(b)'s relatively short statutory period. Relying on the Ninth Circuit's interpretation of the Trade Act of 1974, 19 U.S.C. §§ 2101 *et seq.,* which had a purpose similar to WARN, the *United Magazine* court observed,

> "[i]n order to serve the Act's purposes of retraining, adjustment, and relocation, it was important that workers claim and receive benefits promptly after discharge ... Thus, when workers fail to apply timely for benefits and are so not eligible, it is not that they are being penalized for failure to file; rather they simply are so [sic] longer within the category Congress intended to aid by this program."

*Id.* at 192 (quoting *Lloyd v. United States Dep't of Labor,* 637 F.2d 1267, 1270–71 (9th Cir.1980)).

Similarly, in *Halkias v. General Dynamics Corp.,* 825 F.Supp. 123 (N.D.Tex.1993), *aff'd,* 31 F.3d 224 (5th Cir.1994), the court emphasized the need for a short uniform statutory period in order to effectuate the limited purpose of WARN. In addition, contrary to the suggestion in *Specialty Paperboard* that forum shopping will not be a problem in WARN actions, the *Halkias* court observed, "The uniformity consideration is particularly persuasive in this action in light of the fact that the lay-offs ... affected employees in Texas, Oklahoma, and Missouri." *Id.* at 125.

### C.

Based on the foregoing, we conclude that the district court did not err in applying the six-month limitations period of section 10(b). As the *DelCostello* line of cases teach, three inquiries are relevant in determining whether federal law should displace the norm of borrowing from state law. First, is uniformity desirable? Second, does federal law provide a much clearer analogy than state law? Third, does federal law significantly and directly advance the policy underlying the statute in a way that state law does not? Here, the answer to each question is affirmative.

First, uniformity is highly desirable. Both the plaintiff and the Second Circuit downplay the multi-state nature of decisions that implicate WARN, and thus the potential for forum shopping and related anomalies arising from differing statutes of limitations in several states in which a single employer does business. First, as evidenced by *Halkias,* a single decision can result in plant closings in several states, any one of which could provide the forum for suit. The state in which the closing decision was made can provide yet another forum. Second, the company that closes several plants in several states can be sued in those several states and thus be subject to several different statutes of limitations for the same, single federal violation. Third, the parties and the courts could face potentially daunting choice of law problems arising from claims brought in several different states as a result of forum shopping. Finally, given the authorization in WARN to bring suit in any federal district "in which the employer transacts business," 29 U.S.C. § 2104(a)(5), including districts other than where a plant is closed or the plant closing decision was made, the opportunity for forum shopping in today's national and international corporate environment appears limitless.

Uniformity is desirable for a more important reason, however, exemplified by the different courts' inconsistent analyses. The suggestions of possibly analogous limitations periods run the gamut from the catchall limitations period advocated here to those governing contracts or torts. Even the *Specialty Paperboard* and *Wallace* courts, which agreed that state contract limitations periods should apply, did so for divergent reasons. Add to these limitations periods, arguments that can be raised under state unemployment laws, state wage laws, state benefit laws,

state plant closing laws, and the opportunities are endless. Thus, selecting a WARN limitations period implicates the same concerns for uniformity present in *Agency Holding Corp.*

As to the second inquiry, there can be no doubt that section 10(b) provides a closer analogy than the state law advocated here, which in essence provides no analogy. The plaintiff offers a catchall limitations period applicable to any statutory claim that does not contain an express limitations provision. The only commonality between WARN and the proffered state statute is that both are pieces of legislation. Section 10(b), on the other hand, governs unfair labor practice claims arising out of an employer's failure to notify and bargain with the union over plant closings or layoffs. *See* 29 U.S.C. § 158(a)(5). Thus, despite admitted differences between WARN and the NLRA, both are designed to afford protection against job loss—a safeguard that goes to the heart of the employment relationship. As we noted in *Holmes,* "this similarity of purpose" provides the analogy necessary to extend section 10(b) outside the parameters of the NLRA. 984 F.2d at 737.

There are other similarities between WARN and the NLRA. For example, the NLRA defines as one of its purposes the proscription of management practices "which affect commerce and are inimical to the general welfare." 29 U.S.C. § 141(b). Such an objective is consistent with WARN's aim of protecting not only workers, but their community as well. 20 C.F.R. § 639.1(a). The references in WARN to the NLRA further demonstrate that section 10(b) provides a far closer analogy to WARN than does a residual state limitations statute.

The plaintiff's arguments to the contrary are unconvincing. The need to retain counsel can hardly be reason to reject section 10(b), given that employees bringing hybrid claims—which *DelCostello* expressly subjected to section 10(b)—have a similar need to hire counsel. Moreover, most of the complexities attendant to class action litigation, such as notice and certification, do not come into play until the lawsuit has been filed, and

thus have minimal, if any, impact on the limitations issue.

Finally, the six-month limitations period of section 10(b) significantly and directly advances the policies underlying WARN in a way that a five-year catchall provision cannot. By implementing a 60–day notice requirement, Congress clearly intended to provide short-term relief not only to affected employees, but to their communities and supporting state agencies as well. This purpose of bridging what would otherwise be a drain on resources would be defeated if not rapidly implemented. A prolonged statute of limitations would do nothing to achieve WARN's aim of starting employees on the road to retraining and reemployment before unemployment becomes a problem.

### IV.

For the foregoing reasons, we find that section 10(b) of the NLRA provides the more analogous limitations provision and better effectuates the policies underlying WARN than does Kentucky's residual limitations period. Accordingly, we **AFFIRM** the district court's order dismissing the plaintiff's claim as untimely.